UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| CHARLES E. HARRIS III, | § | Cv. No. SA:12-CV-00540-DAE |
| | § | Bankr. No. 10-50655-lmc |
| Debtor. | § | |
| _____ | § | |
| | § | |
| MARY K. VIEGELAHN, Chapter 13 | § | |
| Trustee, | § | |
| | § | |
| Appellant, | § | |
| | § | |
| vs. | § | |
| | § | |
| CHARLES E. HARRIS III, | § | |
| | § | |
| Appellee. | § | |

MEMORANDUM OPINION AND ORDER AFFIRMING BANKRUPTCY
COURT'S ORDER COMPELLING RETURN OF FUNDS

Appellant Mary K. Viegelahn, Chapter 13 Trustee ("the Trustee"),

appeals the February 29, 2012 Order Compelling Return of Funds issued by the

United States Bankruptcy Court for the Western District of Texas.

(Doc. # 1-4 Ex. 4.)[1]  The Bankruptcy Court's Order granted debtor Charles E.

Harris III's motion to compel the Trustee to turn over undistributed funds collected

pursuant to a confirmed Chapter 13 plan in a case that was later converted to

_____

[1] Except where otherwise noted, all citations are to the docket in Cv. No.
SA:12-CV-00540-DAE.

1

Chapter 7.  Having considered the record and the parties' briefs, the Court, for the reasons below, **AFFIRMS** the Order of the Bankruptcy Court.

<u>BACKGROUND</u>

On February 24, 2010, Charles E. Harris III ("Debtor") filed a voluntary petition for relief under Chapter 13 of the United States Bankruptcy Code.  (Doc. # 1-4 Ex. 6 ¶ II.)  His plan of reorganization, which was confirmed on April 15, 2010, called for him to pay the Trustee, for distribution to various creditors, $530.00 per month for 60 months.  (Doc. # 1-4 Ex. 11.)

In November of 2010, after Debtor fell behind on his mortgage (doc. # 9 at 3), the Bankruptcy Court lifted the automatic stay preventing Chase Home Finance from foreclosing on Debtor's residence.[2]  (Bankr. Case No. 10-50655-lmc [hereinafter Bankr. Case], doc. # 28.)  Debtor moved out of his home and into a rental but continued to make payments to the Trustee pursuant to the pay order.  (Doc. # 9 at 3.)  In light of the foreclosure, the Trustee placed a hold on funds designated for the mortgage under the plan, and funds began to accumulate in the Trustee's account.  (Doc. # 6 at 11.)

On November 21, 2011, Debtor, having determined that he could no longer afford the plan payments, filed a Notice of Voluntary Conversion that

---

[2] The Bankruptcy Code's automatic stay, which takes effect immediately upon the filing of a bankruptcy petition, helps ensure the orderly distribution of assets by temporarily protecting the property of the debtor's estate from the reach of creditors.  <u>See</u> 11 U.S.C. § 362(h).

2

converted his case from a Chapter 13 reorganization of debts to a Chapter 7 liquidation.  (Bankr. Case, doc. # 30.)  At that time, the Trustee had $5,519.22 that she had received from Debtor but had not distributed to creditors.  (Doc. # 6 at 11.)

Around the same time, Debtor's attorney sent an email to the Trustee requesting to be paid $1,200.00 in attorney's fees out of the funds that the Trustee had received from Debtor.  (Doc. # 1-4 Ex. 6 ¶ III.)  The Trustee disbursed the requested amount to Debtor's attorney on or about November 22, 2011, leaving $4,319.22 in Debtor's account.  (Id.)

On or about December 1, 2011—ten days after Debtor converted his case to Chapter 7—the Trustee distributed the remaining funds to several of Debtor's creditors in accordance with the former Chapter 13 plan.  (Id.)   On or about December 12, 2011, Debtor's attorney requested that those funds be refunded to Debtor.  (Id. ¶ IV.)  The Trustee refused, claiming she was required to distribute to creditors any funds received before the case was converted to Chapter 7.  (Id.)

On December 29, 2011, Debtor, who had expected to receive the money held by the Trustee to cover his ongoing personal expenses, filed a Motion to Compel Return of Funds.  (Doc. # 1-4 Ex. 6.)  The Bankruptcy Court granted Debtor's Motion on February 29, 2012, ordering the Trustee to pay Debtor $4,319.22.  (Id. Ex. 4.)  On March 5, 2012, the Trustee timely appealed the

Bankruptcy Court's Order to this Court pursuant to 28 U.S.C. § 158(a).  (Id. Ex. 3.)

The Trustee submitted the following issues for appeal:

1. Did the Bankruptcy Court commit error by finding that the Chapter 13 Trustee is not duly authorized to disburse funds to a debtor's creditors post-conversion that were received by the Trustee from the debtor prior to conversion?

2. Do undistributed payments to the Chapter 13 Trustee made by the debtor post-confirmation but pre-conversion re-vest in the debtor, or do such payments remain subject to disbursement to creditors by the Chapter 13 Trustee pursuant to a confirmed plan?

3. Does 11 U.S.C. § 348(e) prohibit a Chapter 13 Trustee from disbursing to creditors, pursuant to a confirmed plan, payments made by the debtor to the Chapter 13 Trustee prior to conversion to Chapter 7?

4. Does 11 U.S.C. § 1326(a)(2)—which states: "[A] payment made under this subsection shall be retained by the trustee until confirmation or denial of confirmation of a plan.  If a plan is confirmed, the trustee shall distribute any such payment in accordance with the plan as soon as is practicable.  If a plan is not confirmed, the trustee shall return any such payment to the debtor after deducting any unpaid claim under § 503(b) of this title"—vest rights in the creditors such that a Chapter 13 Trustee must disburse to creditors plan payments made by the debtor to the Trustee post-confirmation but pre-conversion?

5. Does 11 U.S.C. § 1327, which provides that a confirmed plan binds the debtor and each creditor, allow the Chapter 13 Trustee to disburse to creditors payments made by the debtor to the Chapter 13 Trustee post-confirmation but prior to conversion to Chapter 7?

(Doc. # 1-4 Ex. 1.)  These five issues all present essentially the same question:

Was the Trustee required to distribute the funds in her possession at the time of

conversion to Debtor or to his creditors?

STANDARD OF REVIEW

A district court reviews a bankruptcy court's findings of fact for clear error.  In re Kennard, 970 F.2d 1455, 1457–58 (5th Cir. 1992) (citing In re Multiponics, Inc., 622 F.2d 709, 713 (5th Cir. 1980)); Fed. R. Bankr. P. 8013. Conclusions of law are reviewed de novo.  Id. at 1458; In re Stembridge, 394 F.3d 383, 385 (5th Cir. 2004).

DISCUSSION

This appeal raises a question on which the Fifth Circuit has yet to rule involving the interpretation of Chapter 13 of the Bankruptcy Code, 11 U.S.C. §§ 101–1532 (2005) ("the Code"): If, at the time of conversion from a Chapter 13 reorganization of debts to a Chapter 7 liquidation, the Trustee possesses funds collected pursuant to a confirmed Chapter 13 reorganization plan, must the Trustee return those funds to the debtor or distribute them to creditors in accordance with the plan?  The Third Circuit is the only court of appeals that has directly addressed this issue; it concluded that the funds in question must be returned to the debtor.  See In re Michael, 699 F.3d 305, 317 (3d Cir. 2012).

Because this is a pure question of law, the Court reviews the Bankruptcy Court's conclusion de novo.  For the reasons that follow, this Court agrees with the Third Circuit's reasoning and concludes that the Trustee was required to return the funds to Debtor.

I.      Bankruptcies Under Chapters 7 and 13

        The Court begins with a brief overview of bankruptcies under

Chapters 7 and 13 of the Code and conversions from Chapter 13 to Chapter 7.

        A.  Chapter 7 Liquidations

        A Chapter 7 bankruptcy is also known as a "straight bankruptcy" or

liquidation and is generally available only to debtors who meet certain low-income

requirements.  See 11 U.S.C. § 707(b)(2)(A); In re Hill, 328 B.R. 490, 497 (Bankr.

S.D. Tex. 2005) (holding that debtors with combined monthly income of more than

$13,600.00 were "not needy debtors entitled to relief under chapter 7").  Filing a

Chapter 7 petition automatically creates an "estate" comprised of all of a debtor's

legal and equitable interests in property as of the filing date.

11 U.S.C. §§ 301(a), 541.  Subject to certain exceptions, see id. § 541(a), property

acquired after filing for Chapter 7 bankruptcy is not included in the estate.

        An impartial trustee is appointed to administer the estate, id. § 701,

selling the debtor's nonexempt assets and using the proceeds to pay creditors in

accordance with the provisions of the Code, id. §§ 704, 726.  With certain

exceptions, see id. § 523, the remaining debts are then fully discharged, id. § 727.

However, a bankruptcy court may refuse to grant discharge in certain

circumstances, such as in cases of fraud, id. § 727(a)(4); where the debtor has filed

for Chapter 7 relief within the previous eight years, id. § 727(a)(8); or where the

6

court determines that granting relief would be "an abuse of the provisions of [Chapter 7]," id. § 707.

B. Chapter 13 Debt Reorganizations

While Chapter 7 uses liquidation to satisfy existing debt, Chapter 13 looks to future income.  Also known as a "wage earner's plan," Chapter 13 enables individuals with regular income to develop a plan to repay all or part of their debts over a three- to five-year period.  Id. § 1322(d).  In order to be confirmed by the bankruptcy court, a Chapter 13 plan must provide for creditors to receive at least as much as they would have in a Chapter 7 liquidation.  Id. § 1325(a)(4).  As under Chapter 7, an impartial trustee administers the case, collecting payments from the debtor and making distributions to creditors.  Id. § 1302(b).  The Chapter 13 bankruptcy tends to be favored by debtors who have fallen behind on secured loan payments, such as mortgages and car loans, since it enables the debtor to maintain possession of the property while catching up on payments through a court-approved repayment plan.  See id. § 362.

The estate created upon filing a Chapter 13 petition is not the same as a Chapter 7 estate.  While a Chapter 7 estate is, roughly speaking, a "snapshot" of the debtor's assets at the time of filing, the Chapter 13 estate includes both "the property specified in § 541" that exists at the time of filing and "all property of the kind specified in [§ 541] that the debtor acquires after the commencement of the

7

case but before the case is closed, dismissed, or converted to a case under chapter

7, 11, or 12 of this title, whichever occurs first . . . .” Id. § 1306(a) (emphasis

added).  This includes “earnings from services performed by the debtor after the

commencement of the case,” id. § 1306(b), which is why a Chapter 13 plan is

ordinarily funded by the debtor’s future income.

A debtor must begin making payments to the Chapter 13 trustee

within 30 days of the filing of the plan or an order for relief, whichever is earlier.

Id. § 1326(a)(1).  The trustee must retain these payments “until confirmation or

denial of confirmation [of the plan].” Id. § 1326(a)(2).  Confirmation of the plan

(1) vests all property of the estate in the debtor (except as otherwise provided),

id. § 1327(b); (2) binds the debtor and its creditors, id. § 1327(a); and (3) obligates

the trustee to distribute the debtor’s payments under the plan to creditors,

id. § 1326(a)(2), (c).  “If a plan is not confirmed,” however, “the trustee shall

return any such payments not previously paid . . . to the debtor, after deducting any

unpaid claim allowed under section 503(b).” Id. § 1326(a)(2).

C.  Conversion from Chapter 13 to Chapter 7

At any time during the Chapter 13 proceeding, even following

confirmation of the plan, a debtor may convert his case to a Chapter 7 liquidation.

11 U.S.C. § 1307(a).  Conversion “does not effect a change in the date of filing of

the petition.” Id. § 348(a).  In other words, when a case is converted from Chapter

13 to Chapter 7, the order converting the case is effectively backdated to the date on which the Chapter 13 petition was filed.  Accordingly, the Code provides that "property of the estate in the converted [Chapter 7] case shall consist of property of the estate, as of the date of filing of the [Chapter 13] petition, that remains in the possession of or is under the control of the debtor on the date of conversion." Id. § 348(f)(1)(A) (emphasis added).  Where the conversion was in bad faith, however, section 348(f)(2) provides that "the property of the estate in the converted case shall consist of the property as of the date of conversion." Id. § 348(f)(2) (emphasis added).

II.     Did Plan Confirmation Vest in Debtor's Creditors a Right to the Funds?

The funds at issue in this case were garnished from Debtor's wages during the time after confirmation of his Chapter 13 plan but before conversion of his case to Chapter 7.  (Doc. # 6 at 11.)  Accordingly, there is no dispute that these funds were not "property of the estate . . . as of the date of filing of the [Chapter 13] petition . . . ."  11 U.S.C. § 348(f)(1)(A).  A plain reading of § 348(f)(1)(A) would seem to establish, therefore, that the funds should not be considered part of the Chapter 7 estate in the absence of a bad-faith conversion.  See § 348(f)(2). And if the funds are not part of the Chapter 7 estate, argues Debtor, they should be returned to him upon conversion.  (Doc. # 9 at 7.).

In support of this argument, Debtor points to the Fifth Circuit's

decision in <u>Stamm v. Morton (In re Stamm)</u>, 222 F.3d 216 (5th Cir. 2000).

(Doc. # 9 at 5–7.)  In <u>Stamm</u>, debtors filed a Chapter 13 petition and began making

payments to the trustee.  <u>Id.</u> at 216.  When they were "unable to confirm a [Chapter

13] plan," however, the debtors converted their case to Chapter 7.  <u>Id.</u>  Upon

conversion, the Chapter 13 trustee distributed to the Chapter 7 trustee the payments

the debtors had made while awaiting confirmation.  <u>Id.</u>  The Chapter 7 trustee filed

a Motion for Determination of whether the funds were property of the Chapter 7

estate, and both the bankruptcy court and the district court held that they were.  <u>Id.</u>

at 216–17.

The Fifth Circuit reversed, basing its decision on the 1994

amendments to § 348.  <u>Id.</u> at 218.  The court noted that Congress, as part of the

Bankruptcy Reform Act of 1994, Pub. L. No. 103-394, § 311, 108 Stat. 4106,

4137-38, had amended § 348 to resolve a circuit split on the issue of whether

post-petition Chapter 13 income remained property of the estate upon conversion

to Chapter 7.  <u>Id.</u> at 217 (citing <u>Baker v. Rank (In re Baker)</u>, 154 F.3d 534, 536

(5th Cir. 1998) (discussing the split and noting that the issue was confusing

because it involved the interplay of several Code provisions—§ 541, § 1306, and

§ 348)); <u>see also</u> <u>In re Bobroff</u>, 766 F.2d 797, 803–04 (3d Cir. 1985) (holding that

post-petition income does not remain property of the estate); <u>In re Lybrook</u>, 951

F.2d 136, 138 (7th Cir. 1991) (holding that post-petition income remains property

of the estate); In re Lindberg, 735 F.2d 1087, 1089–90 (8th Cir. 1984) (same). Looking to the legislative history of § 348, the Stamm court concluded that Congress meant to clarify that "[d]ebtors' wages, earned after the filing of their Chapter 13 petition and before discharge under Chapter 7, are not part of the Chapter 7 estate." Id. at 218. Accordingly, the Stamm court ordered that the payments the debtors had made prior to conversion be returned to them. Id.

   The Trustee "does not dispute that post[-]petition wages are not property of a Chapter 7 estate." (Doc. # 10 at 4.) However, she insists that funds collected under a confirmed plan "belong to the Chapter 13 estate" (id. at 8 (emphasis added)), not to Debtor. Confirmation of a plan, asserts the Trustee, vests certain rights in the creditors. It creates an irrevocable trust in the funds the Trustee collects, and the Trustee has no choice but to distribute those funds according to the plan. (Doc. # 6 at 16.) Accordingly, the Trustee insists that Stamm is distinguishable from this case since the Chapter 13 plan in that case had not been confirmed prior to conversion. (Id. at 3; see also In re Stamm, 222 F.3d 217 (stating that the funds at issue were "post-commencement pre-confirmation wages paid to the Chapter 13 Trustee").)

   The Trustee bases her argument on § 1326 and § 1327 of the Code. Section 1326 provides that "[i]f a [Chapter 13] plan is confirmed, the trustee shall distribute any such payment in accordance with the plan as soon as is practicable"

and that "[i]f a plan is not confirmed, the trustee shall return any such payments not previously paid and not yet due and owing to creditors . . . to the debtor . . . ." 11 U.S.C. § 1326 (emphases added).  Pointing to the mandatory language of this section, the Trustee argues that she had no choice but to distribute any funds she received from Debtor pursuant to his confirmed plan.  (Doc. # 6 at 17.)

Although § 348(e) states that "[c]onversion of a case . . . terminates the service of any trustee or examiner that is serving in the case before such conversion," the Trustee argues that this section does not operate to prevent a trustee from disbursing funds in her possession at the time of conversion. (Id. at 15.)  She points out that a trustee's services clearly do not terminate immediately upon conversion since she is required to wind up the administration of the Chapter 13 estate by turning over to the Chapter 7 trustee the records and property of the estate in her possession, see Fed. R. Bankr. P. 1019(4), and by filing a final report and account, see Fed. R. Bankr. P. 1019(5)(B)(ii). (Doc. # 6 at 15.)  Because § 1326(a)(2) states that a trustee "shall" distribute funds received according to a confirmed plan, argues the Trustee, § 348 does not relieve a Chapter 13 trustee of the duty to disburse to creditors monies received post-confirmation and pre-conversion.  (Id. at 16.)

A number of courts, mostly in decisions written before the addition of § 348(f), have agreed with the Trustee's argument.  In In re Waugh, for example,

the Bankruptcy Court for the Western District of Pennsylvania held that "[t]he word 'shall' in section 1326(a)(2) creates the condition of a trust" and that "[c]reditors have the right to the funds in an active confirmed chapter 13 plan upon payment by the debtor." 82 B.R. 394, 300 (Bankr. W.D. Pa. 1988); see also In re Milledge, 94 B.R. 218, 220 (Bankr. M.D. Ga. 1988) (same). Similarly, the bankruptcy court in In re Galloway held that after a debtor "voluntarily part[s] with wages and deliver[s] them to the custody of a trustee in performance of a confirmed Chapter 13 plan, the creditors have a vested right to receive those payments pursuant to the plan." 134 B.R. 602, 603 (Bankr. W.D. Ky. 1991); see also In re Halpenny, 125 B.R. 814 (Bankr. D. Haw. 1991) (same).

Central to these courts' holdings is the idea that a confirmed plan requires creditors to forgo certain rights in exchange for the debtor's promise to make payments under the plan. Under a confirmed plan, for example, creditors might be prevented from foreclosing on the debtor's home or repossessing his automobile, being forced to settle instead for the debtor's promise to pay them back over time. As the Bankruptcy Court for the Southern District of Mississippi put it:

> It appears to this Court to be patently unfair to allow a debtor to drive and depreciate an automobile, occupy a home or use household goods based on a promise to his creditors in the form of a court approved plan, and then allow the debtor to snatch away the monies which the trustee is holding to make the payments, but has not yet disbursed, by allowing the debtor to pick an opportune time to convert.

13

In re O'Quinn, 143 B.R. 408, 413 (1992).  By permitting Debtor to recoup the

funds at issue, insists the Trustee, the Bankruptcy Court's decision "essentially

allows a debtor to convert undistributed funds . . . into [his] savings account"; and

this will force trustees, "in an attempt to avoid such a windfall to [debtors], to

make distributions to creditors on a daily basis," which the Trustee argues is

impractical.  (Doc. # 6 at 24.)

> Finally, these courts point to § 1326(a)(2)'s language requiring the

Chapter 13 trustee to return any undistributed funds to the debtor if a plan is not

confirmed.  "Read alone," admitted the Third Circuit in In re Michael,

> this section arguably indicates that if a plan is not confirmed the trustee must
> return accumulated funds to the debtor, and that if a plan is confirmed the
> trustee, by implication stemming from the absence of similar language, is
> required to distribute accumulated funds to creditors as provided by the plan.
> That is, if Congress intended for undistributed funds held by the trustee
> post-confirmation to be returned to a debtor, it could have included similar
> language regarding post-confirmation payments in § 1326(a)(2).

699 F.3d at 311 (emphases added); see also In re Galloway, 134 B.R. at 603

(holding that from the language of § 1326 "[i]t is clear that the trustee shall return

undistributed payments if the plan is not confirmed" and that "[t]he code is just as

specific that if plan payments are made, pursuant to a confirmed plan, then the

trustee shall distribute any such payments in accordance with the plan").

> While the Trustee's arguments have appeal, the Court finds more

persuasive the reasoning of those courts—including, most recently, the Third

Circuit—that have concluded that post-confirmation, pre-conversion funds in a trustee's possession should be returned to the debtor.  These courts focus on the Congressional policy of encouraging debtors to attempt a Chapter 13 bankruptcy— through which a debtor will pay his creditors at least as much and likely more than he would have under Chapter 7—without penalty if that attempt fails.  See, e.g., In re Boggs, 137 B.R. 408, 411 (Bankr. W.D. Wash. 1992) ("[T]he Congressional policy of encouraging debtors to repay their creditors via Chapter 13 is furthered by debtors (and their counsel) knowing they will not be penalized for attempting Chapter 13."); In re Peters, 44 B.R. 68, 71 (Bankr. M.D. Tenn. 1984) ("Since [§ 348] treats the date of commencement of the Chapter 13 case as the date of commencement of the Chapter 7 case after conversion, the debtor is not penalized for originally pursuing a Chapter 13 case instead of a Chapter 7 case."); In re Bullock, 41 B.R. 637, 640 (Bankr. E.D. Pa. 1984) ("[T]he case is deemed to have been filed as a chapter 7 proceeding and that portion of the debtor's postpetition wages, which were deducted from his salary, were deposited in the chapter 7 estate although they were not properly includable therein . . . .  Since the deducted wages were not part of the chapter 7 estate, the debtor is entitled to recover such wages in full . . . .").

        This Court agrees that Congressional policy should guide the interpretation of these ambiguous Code provisions.  Chapter 13 was intended to

"encourage more debtors to repay their debts over an extended period rather than to opt for straight bankruptcy liquidation and discharge."  H.R. Rep. No. 95-595 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 5966, 1977 WL 9628.  "In return for a debtor's resolve to commit more of his assets to the repayment of his creditors than would be required under a Chapter 7 liquidation, Chapter 13 of the Bankruptcy Code provides the debtor with a number of benefits unavailable under Chapter 7," such as the ability to retain his property and to better protect his credit rating.  In re Peters, 44 B.R. 68, 71 (Bankr. M.D. Tenn. 1984); see also In re Lennon, 65 B.R. 130, 132 (Bankr. N.D. Ga. 1986) ("The statutory scheme of the Bankruptcy Code reflects a congressional intent to make attractive and encourage greater use, which must be voluntary, of Chapter 13 rehabilitation and creditor payment, rather than Chapter 7 liquidation with little or no creditor payment.").

Congress, in the section-by-section analysis accompanying the Bankruptcy Reform Act of 1994, included the following illustration of the "serious disincentive to file chapter 13 filings" that it hoped § 348(f) would eliminate:

> [A] debtor who had $10,000 equity in a home at the beginning of the case, in a State with a $10,000 homestead exemption, would have to be counseled concerning the risk that after he or she paid off a $10,000 second mortgage in the chapter 13 case, creating $10,000 in equity, there would be a risk that the home could be lost if the case were converted to chapter 7 (which can occur involuntarily).  If all of the debtor's property at the time of conversion is the property of the chapter 7 estate, the trustee would sell the home . . . to realize the $10,000 in equity for the unsecured creditors and the debtor would lose the home.

In re Michael, 699 F.3d at 314 (quoting H.R. Rep. No. 103-835, reprinted in 1994

U.S.C.C.A.N. 3340, 3366, 1994 WL 562232); see also Bobroff, 766 F.2d at 803

("If debtors must take the risk that property acquired during the course of an

attempt at repayment will have to be liquidated for the benefit of creditors if

chapter 13 proves unavailing, the incentive to give chapter 13—which must be

voluntary—a try will be greatly diminished.").  It seems clear, therefore, that

distributing the funds in question to Debtor's creditors would contravene

Congressional policy.

      Those courts holding that undistributed pre-conversion payments must

be returned to the debtor reason that there is nothing unfair about returning those

funds to a debtor rather than to his creditors.  See, e.g., In re Boggs, 137 B.R. at

410 ("Th[e] creditors have had the benefit of distribution from debtors' wage

contributions, which would not have been available to them under Chapter 7.  In

all, there seems no inherent inequity in refunding undisbursed wage contributions

to debtors on conversion.").  This Court agrees.  By attempting a Chapter 13

bankruptcy, a debtor attempts to pay his creditors more than they would have

received under a Chapter 7 liquidation.  When Chapter 13 plan does not work out

and a debtor exercises his right to convert to Chapter 7, "no reason of policy

suggests itself why the creditors should not be put back in precisely the same

position as they would have been had the debtor never sought to repay his debts by

filing under Chapter 13." In re Hannan, 24 B.R. 691, 692 (Bankr. E.D.N.Y.).

Moreover, as the Third Circuit recently noted, "no provision in the Bankruptcy

Code classifies any property, including post-petition wages, as belonging to

creditors." In re Michael, 699 F.3d at 312–13.  That court explained:

> When the debtor transfers funds to the Chapter 13 trustee . . . under a
> confirmed plan . . . the funds become part of the estate, and the debtor
> retains a vested interest in them.  Though creditors have a right to those
> payments based on the confirmed plan, the debtor does not lose his vested
> interest until the trustee affirmatively transfers the funds to creditors.  Also,
> § 1326(a)(2) and (c) only address the obligation of the trustee to distribute
> payments in accordance with a confirmed plan; they do not vest creditors
> with any property rights.

Id. at 313.  Instead, conversion from Chapter 13 to Chapter 7 "necessarily ends the

Chapter 13 case, which also terminates that Chapter 13 estate." Id.

Of course, the Court realizes that this interpretation of the Code might

incentivize bad-faith conversions—that debtors with no intention of fully repaying

their creditors under a Chapter 13 plan might file a Chapter 13 petition, take

advantage of the automatic stays and other benefits, and then convert to a Chapter

7 liquidation at an opportune time.  However, Congress recognized this danger,

too; and that, presumably, is why it drafted § 348(f)(2) to provide that "[i]f the

debtor converts a case . . . in bad faith, the property of the estate in the converted

case shall consist of the property as of the date of conversion." Id. (emphasis

added).  Thus, if a court determines that a debtor is attempting to "game the

system," it may "punish" him by determining the Chapter 7 estate at the time of

conversion instead of at the time that he filed a petition under Chapter 13.

Moreover, the fact that Congress included a bad-faith exception provides

additional support for the idea that Congress would want the disputed funds to be

returned to Debtor.  As the Third Circuit explained, "by providing that a debtor

who converts in bad faith is not entitled to this post-petition property, § 348(f)(2)

logically requires that a debtor receive the property if he acts in good faith."  In re

Michael, 699 F.3d at 314.

    Holding that Debtor is not entitled to the funds at issue in this case

would create precisely the kind of disincentive to file a Chapter 13 bankruptcy that

Congress was trying to avoid.  Here, Debtor attempted to repay his debts under

Chapter 13, making payments under the confirmed plan for over a year and a half.

(Doc. # 6 at 11.)  There is no dispute that the funds at issue would not have been

part of the Chapter 7 estate if Debtor had filed a Chapter 7 petition originally; nor

does the Trustee allege that Debtor converted to Chapter 7 in bad faith.  Thus, for

the reasons given above, the Court agrees with the Third Circuit's recent decision

in In re Michael, 699 F.3d 305 (3d Cir. 2012), and concludes that the

Congressional policy favoring Chapter 13 over Chapter 7 requires that the funds at

issue be returned to Debtor.

    To explicitly address each of the issues presented for appeal, the Court

hereby holds (1) that the Bankruptcy Court did not err in finding that a Chapter 13

trustee is not authorized to disburse to creditors, after conversion to Chapter 7,

undistributed funds received prior to conversion; (2) that undistributed payments to

a Chapter 13 trustee made after confirmation of a Chapter 13 plan but before

conversion to Chapter 7 re-vest in the debtor upon conversion; (3) that 11

U.S.C. § 348(e) prohibits a Chapter 13 trustee from disbursing, after conversion to

Chapter 7, plan payments made by the debtor prior to conversion; (4) that 11

U.S.C. § 1326(a)(2) does not vest rights in creditors that would require a Chapter

13 trustee to disburse funds to them after conversion to Chapter 7; and (5) that 11

U.S.C. § 1327 does not permit a Chapter 13 trustee to disburse to creditors, after

conversion to Chapter 7, funds paid by the debtor to the trustee pursuant to a

confirmed Chapter 13 plan.

       The Court recognizes that a practical consequence of this holding is

that "creditors will request more frequent distributions from the Chapter 13

trustee." In re Michael, 699 F.3d at 317.   This may be inconvenient to trustees,

since the most efficient manner of administering payments may be to accumulate

them and distribute them to creditors at an established time.  However, the Court

concludes that the increased administrative burden, if any, is outweighed by the

clearly expressed Congressional policy of encouraging debtors to attempt a

Chapter 13 repayment plan over a Chapter 7 liquidation.  Moreover, if a court finds

that a debtor is attempting to "game the system," section 348(f)(2)'s bad-faith

provision authorizes that court to punish such behavior by determining the Chapter 7 estate as of the date of conversion.

CONCLUSION

For the reasons given, the Court **AFFIRMS** the Bankruptcy Court's February 29, 2012 Order Compelling Return of Funds.

**IT IS SO ORDERED.**

**DATED**:  San Antonio, Texas, March 22, 2013.

_____
David Alan Ezra
Senior United States District Judge